FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 09, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RONALD S.,<br><br>                    Plaintiff,<br><br>   v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>                 Defendant. | NO:  4:18-CV-5077-FVS<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 11, 12.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney Nicholas D. Jordan.  Defendant is

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration.  Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet.  *See* Fed. R. Civ. P. 25(d).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

represented by Special Assistant United States Attorney Sarah L. Martin. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 11, is denied and Defendant's Motion, ECF No. 12, is granted.

## JURISDICTION

Plaintiff Ronald S.[2] (Plaintiff), filed for disability insurance benefits (DIB) and supplemental security income (SSI) on June 9, 2014, alleging an onset date of February 7, 2008.[3] Tr. 207-19. Benefits were denied initially, Tr. 148-54, and upon reconsideration, Tr. 155-57, 160-61. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on November 29, 2016. Tr. 44-77. On January 31, 2017, the ALJ issued an unfavorable decision, Tr.18-34, and on June 8, 2018, the

---

[2]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

[3]The ALJ noted three prior DIB applications had been filed and denied. Tr. 18. Because the prior applications were not appealed, the ALJ found they were administratively final. Tr. 18. The ALJ noted that although Plaintiff alleged an onset date of February 7, 2008, the period at issue in the current decision began the day after the last determination became administratively final, which was July 18, 2009. Tr. 18-19.

Appeals Council denied review. Tr. 1-5. The matter is now before this Court pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1964 and was 52 years old at the time of the hearing. Tr. 48. He has a GED and attended some community college. Tr. 49. He last worked for an irrigation company reading water meters, but he testified that the job was too difficult due to his limitations. Tr. 51. He has work experience as a laborer. Tr. 51-54. He testified that he wants to work. Tr. 57, 61.

He herniated a disc in his back in 2008. Tr. 54. He has COPD. Tr. 50. He has had pain due to problems in his knee, ankle, and arms. Tr. 61-62. He has arthritis and bursitis in his hands so they are stiff and painful. Tr. 63. His balance is bad, and he does not feel steady or stable. Tr. 65. His stomach is "really screwed up" so he does not take any medication. Tr. 61. He sustained a closed head injury in 1990 and suffered frontal lobe brain damage. Tr. 481-82. He testified that he has memory problems. Tr. 57. He testified that when he tried going to community college, he could not remember what he had done the day before. Tr. 58.

/ / /

/ / /

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally

bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers

in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since July 18, 2009, the day after the last determination became administratively final. Tr. 21. At step two, the ALJ found that Plaintiff has the following severe impairments: left ankle sprain/strain; right knee degenerative joint disease; lumbar spine degenerative disc disease; organic brain syndrome status post closed head injury (neurocognitive disorder); pain disorder (somatoform); lateral epicondylitis of the bilateral elbows as of November 2015. Tr. 21. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 22.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work including the following limitations:

> He is able to occasionally lift and carry 20 pounds, and frequently lift and carry 10 pounds. He can stand and/or walk with normal breaks about 6 hours in an 8 hour day. He can sit for about 6 hours in an 8 hour day with normal breaks. He can occasionally climb ramps and stairs, as well as ladders, ropes and scaffolds. He can balance frequently. He can occasionally stoop, kneel, crouch and crawl. He must avoid concentrated exposure to extreme cold, wetness, vibration and hazards. He is able to perform simple, repetitive, 1-3 step tasks. He can have no contact with the public. He can have superficial contact with coworkers.

Tr. 24.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 32. At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as packing line worker, production assembler, or housekeeping cleaner. Tr. 33-34. Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from July 18, 2009, through the date of the decision. Tr. 34.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act. ECF No. 11. Plaintiff raises the following issues for review:

1.    Whether the ALJ properly evaluated Plaintiff's symptom claims;

2.    Whether the ALJ properly considered the medical opinion evidence; and

3.    Whether the ALJ made a proper step five finding.

ECF No. 11 at 4-16.

/ / /

/ / /

/ / /

# DISCUSSION

## A. Symptom Claims

Plaintiff contends the ALJ improperly rejected his symptom claims. ECF No. 11 at 10-11. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to

permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms less than fully persuasive. Tr. 34.

First, the ALJ found the evidence demonstrates Plaintiff is more functional than alleged. Tr. 25-29. Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)); *see Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (a medical opinion indicating the claimant can perform some work may undermine claim of disabling limitations).

The ALJ discussed evidence indicating Plaintiff's abilities are greater than alleged, including the results of two physical capacities evaluations and two medical physical examinations. Tr. 25-27. Kirk Holle, PT, completed a physical capacities evaluation in May 2010 and concluded Plaintiff was capable of medium work. Tr. 826-37. In November 2012, Edward G. DeVita, M.D., a neurologist, and James Schwartz, M.D., an orthopedic surgeon, examined Plaintiff and made numerous findings for the Department of Labor and Industries, including the conclusion that Plaintiff was physically and mentally able to participate in community college coursework for the occupation of engineer technician. Tr. 445-54. In January 2013, Clay Smith, PT, completed a second physical capacities evaluation and concluded Plaintiff was capable of medium work. Tr. 875-904. In March 2014, Saul Valencia, M.D., examined Plaintiff and completed a DSHS Physical Functional Evaluation form and opined that Plaintiff was capable of light work. Tr. 455-60. The ALJ ultimately gave partial weight to the opinions of Mr. Holle, Mr. Smith, and Dr. Valencia and found that Plaintiff's residual functional capacity is more restricted than opined by those providers. Tr. 23-24, 30-31. Notwithstanding, the ALJ reasonably considered the fact that their findings and opinions conflict with Plaintiff's alleged limitations in evaluating Plaintiff's symptom testimony.

Similarly, the ALJ discussed the record regarding Plaintiff's mental impairments in detail, including three mental health evaluations. Tr. 27-29. In

November 2012, Richard Schneider, M.D., a psychiatrist, concluded all of Plaintiff's mental setbacks occurred as a result of his April 22, 1990 head injury, and no restrictions or accommodations of a psychological nature would be necessary arising out of his 2008 back injury. Tr. 437-44. In April 2014, Nora K. Marks, Ph.D., conducted a psychological examination resulting in mixed findings, but as the ALJ noted, she found Plaintiff has "excellent immediate auditory recall" and "good working memory," in contrast to Plaintiff's allegation of poor memory. Tr. 28, 461-65. In August 2015, mental status exam results obtained Dan Eslinger, PMHNP,[4] were mixed, but the ALJ noted Mr. Eslinger did not explain any basis for finding that Plaintiff's recent memory and concentration was impaired. Tr. 934-39. The ALJ observed that throughout the record, Plaintiff was consistently found to be alert, oriented in all spheres, with normal judgment, insight, and appropriate mood and affect. Tr. 29 (citing Tr. 460, 471, 477, 854, 857, 868, 889, 961, 965).

Plaintiff's only argument is that the ALJ was not specific enough in discussing the evidence. ECF No. 11 at 8. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). While the ALJ could perhaps have provided more specific analysis, the

---

[4] A "PMHNP" is a psychiatric and mental health nurse practitioner.

Court concludes the evidence cited by the ALJ reasonably supports the ALJ's

conclusion.  Even if the ALJ's analysis could have been more specific, the ALJ

cited other clear and convincing reasons finding Plaintiff's symptom claims less

than fully credible.[5]

Second, the ALJ found Plaintiff's own report of activities is inconsistent

with his allegations.  Tr. 29.  Even if a claimant's daily activities do not

demonstrate a claimant can work, they may undermine the claimant's complaints if

they suggest the severity of the claimant's limitations were exaggerated.  *See*

*Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).   The

ALJ observed that although Plaintiff testified he has disabling back pain, his

handwritten function report indicates that he goes fishing "every couple of weeks"

and plays horseshoes and other games "every other night or so."  Tr. 29 (citing Tr.

258).  The ALJ noted that fishing and horseshoes involve "frequent bending and

twisting of the back" and that Plaintiff "by his own report of activities is more

functional than alleged."  Tr. 29.  This is a reasonable interpretation of the

evidence.

---

[5] Harmless error occurs when an error is inconsequential to the ultimate

nondisability determination.  *See Carmickle*, 533 F.3d at 1162; *Stout v. Comm'r of*

*Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson v. Comm'r of Soc.*

*Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).

Third, the ALJ found the persuasiveness of Plaintiff's mental allegations is reduced because he does not want to pursue treatment. Tr. 29. Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony. 20 C.F.R. §§ 404.1529(iv)-(v), 416.929(c)(3)(iv)-(v) (2011). The ALJ is permitted to consider the claimant's lack of treatment in evaluating symptoms claims. *Burch*, 400 F.3d at 681. However, in some cases, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *Id*. Notwithstanding, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints. *Molina*, 674 F.3d at 1113-14.

The ALJ cited Dr. Schneider's report stating Plaintiff "has no interest in psychotherapy or psychiatric medications." Tr. 29 (quoting Tr. 442). Without citing any authority or the record, Plaintiff asserts "his inability to completely follow through with his prescribed treatment is explained by the severity of his impairments." ECF No. 11 at 8; *see also* ECF No. 13 at 7. Plaintiff's argument is

not supported by the record, and the ALJ's interpretation of the evidence is reasonable.

Fourth, the ALJ found that Plaintiff left college due to personal preference rather than an inability to complete the work. Tr. 29. In evaluating a claimant's symptom claims, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ observed that Plaintiff told multiple medical professionals he was unable to perform well enough to complete community college, but he told Dr Marks in April 2014 that he did not have any difficulty learning in school. Tr. 29, 462. Dr. Marks noted, "he was referred for further schooling, but did not like the experience and discontinued." Tr. 462. Additionally, Plaintiff told Dr. Marks, "he had been a laborer his entire life and that is what he wants to continue doing." Tr. 462. The ALJ observed that wanting to do his past work and disliking community college is different than being unable to complete school due to mental limitations. Tr. 29. This is a clear and convincing reason for finding Plaintiff's symptom claims less reliable.

Fifth, the ALJ found that Plaintiff's receipt of unemployment benefits reduced the persuasiveness of his allegations. Tr. 21. Receipt of unemployment benefits may cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working. *Ghanim*, 763 F.3d at 1165; *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir.1988). Notwithstanding, if the record does not

establish whether the claimant held himself out as available for full-time or part-time work, receipt of unemployment benefits may not be inconsistent with disability allegations. *Carmickle*, 533 F.3d at 1161-62. The ALJ found that Plaintiff collected unemployment benefits after 2009 which reduced the persuasiveness of his allegations because he was required to apply for jobs each week and certify that he was able to work. Tr. 21. Specifically, the ALJ found that for the second quarter of 2013, when the amount of unemployment collected by Plaintiff ($1,175) exceeded the amount of presumed substantial gainful activity ($1,040 to $1,070), Plaintiff's allegations of disability were less persuasive. Tr. 21. The ALJ's finding is limited to a specific period, and to that extent, the finding is reasonable and based on the record.

**B.    Medical Opinion Evidence**

Plaintiff contends the ALJ failed to properly consider the opinions of examining psychologist N.K. Marks, Ph.D., and examining physician Daniel A. Brzusek, D.O. ECF No. 11 at 10-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan*, 246 F.3d at 1201-02 (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's

opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

1. *N.K. Marks, Ph.D.*

Plaintiff contends the ALJ improperly considered Dr. Marks' opinion. ECF No. 11 at 10-12. Dr. Marks examined Plaintiff and completed a DSHS Psychological/Psychiatric Evaluation form in April 2014. Tr. 461-65. Dr. Marks diagnosed   anxiety disorder NOS; alcohol abuse in remission by history; adjustment disorder with mixed depression and mood; cognitive disorder NOS with personality change likely secondary to traumatic brain injury. Tr. 463. She assessed severe

limitations[6] in the ability to communicate and perform effectively in a work setting and in the ability to maintain appropriate behavior in a work setting. Tr 463. Dr. Marks assessed marked limitations[7] in the ability to perform activities within a schedule, maintain attendance, and be punctual within customary tolerances without special supervision; in the ability to complete a normal work day and work week without interruptions from psychologically based symptoms; and in the ability to set realistic goals and plan independently. Tr. 463. Additionally, Dr. Marks assessed moderate limitations in four functional areas. Tr. 463.

The ALJ gave partial weight to Dr. Marks' opinion. Tr. 30. The ALJ found the moderate limitations assessed by Dr. Marks are generally consistent with her detailed exam findings and observations. Tr. 30, 464-65. However, the ALJ gave less weight to the check-box portion of her opinion that Plaintiff has marked to severe mental limitations. Tr. 30. Because Dr. Marks' opinion regarding marked and severe limitations was contradicted by the opinions of reviewing psychologists Jan L. Lewis, Ph.D., Tr. 106-08, and Christmas Covell, Ph.D., Tr. 142-44, the ALJ

---

[6] The form defines a "severe" limitation as an "inability to perform the particular activity in regular competitive employment or outside of a sheltered workshop." Tr. 463.

[7] A "marked" limitation is "a very significant limitation on the ability to perform one or more basic work activity." Tr. 463.

was required to provide specific and legitimate reasons for rejecting that portion of Dr. Marks' opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ gave less weight to the marked and severe limitations assessed by Dr. Marks because Dr. Marks did not explain the basis for the limitations. Tr. 30. The quality of the explanation provided in a medical opinion is a factor relevant in evaluating the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c) (2012); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ observed that Dr. Marks "did not explain with even a brief narrative analysis how and why these limitations are supported by either her exam and/or the evidence." Tr. 30. As noted by Defendant, psychological testing conducted by Dr. Marks does not appear to support the marked and severe limitations assessed because Plaintiff made no errors on Trail Making test parts A and B; test results indicated Plaintiff does not have difficulty with executive functioning and planning; Plaintiff was able to follow simple written and spoken directions; and Dr. Marks indicated Plaintiff was "functioning much better than expected post a couple of major head injuries." Tr. 462; ECF No. 12 at 10. The ALJ's conclusion was reasonable based on the evidence and this is a specific, legitimate reason for giving less weight to the marked and severe limitations assessed by Dr. Marks.

Second, the ALJ found Dr. Marks appears to have relied heavily on Plaintiff's subjective symptoms which the ALJ found are unreliable. Tr. 30. A physician's

opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair*, 885 F.2d at 604. However, the ALJ must provide the basis for the conclusion that an opinion was more heavily based on a claimant's self-reports than the medical evidence. *Ghanim*, 763 F.3d at 1162. The ALJ indicated that the basis for this finding is the narrative completed by Dr. Marks, Tr. 461-62, which is primarily Plaintiff's self-description of his symptoms and history. Tr. 30. As noted *supra*, because Dr. Marks did not explain the limitations assessed, and because the objective findings do not appear to support marked and severe limitations, it was reasonable for the ALJ to conclude that Dr. Marks relied primarily on Plaintiff's self-report. Because the ALJ made a legally sufficient finding that Plaintiff's symptom complaints are not completely reliable, this is a specific, legitimate basis for rejecting the more limited portions of Dr. Marks' report.

   2. *Daniel A. Brzusek, D.O.*

   Plaintiff contends the ALJ failed to properly consider the opinion of Dr. Brzusek, who completed an independent medical examination in November 2013. ECF No. 11 at 12-13; Tr. 905-23. Dr. Brzusek found Plaintiff has a bad back, bad ankle, and bad knee, as well as other medical concerns, but that he would not be precluded from going back to school as an engineering technician. Tr. 920-21. However, Dr. Brzusek also found Plaintiff is impeded by "brain dysfunction" due to

his head injury in 1990. Tr. 920-21. He opined that he would "be at a loss unilaterally to determine a vocation that would be competitively viable for this gentleman." Tr. 921.

The ALJ gave little weight to Dr. Brzusek's opinion. Tr. 31. Because Dr. Brzusek's opinion was contradicted by the opinion of reviewing physician Robert Hoskins, M.D., Tr. 140-42, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Brzusek's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Brzusek's opinion is inconsistent with Plaintiff's work history. Tr. 31. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Although Dr. Brzusek opined "[t]he most impeding factor as far as retraining to a lighter job or engineering tech position is the brain dysfunction," Dr. Brzusek himself noted that Plaintiff was able to work for 28 years after sustaining a traumatic brain injury in 1990. Tr. 31, 920-21. The ALJ reasonably determined that Dr. Brzusek's opinion that Plaintiff cannot work due to his brain injury is inconsistent with Plaintiff's past ability to work in spite of his brain injury. This is a specific, legitimate reason for giving less weight to the opinion.

Second, the ALJ found that Dr. Brzusek's opinion was made in the context of a state Department of Labor and Industries (L&I) claim rather than under federal Social Security Administration disability guidelines. Tr. 31. The regulations

provide that the amount of an acceptable source's knowledge of Social Security

disability programs and their evidentiary requirements may be considered in

evaluating an opinion.  20 C.F.R. §§ 404.1527(c), 416.927(c) (2012).  Similarly, the

ALJ may consider a medical provider's familiarity with "disability programs and

their evidentiary requirements" when evaluating a medical opinion.  *Orn*, 495 F.3d

at 631.  The ALJ noted that L&I claims consider whether the claimant is capable of

returning to the job of injury, whereas Social Security disability claims consider

whether the claimant is capable of other jobs as well.  Tr. 31.  The ALJ noted Dr.

Brzusek's comment that he would "be at a loss unilaterally to determine a vocation

that would be competitively viable for this gentleman," and found this statement is

directly related to the L&I claim and the standards of review for that program.  Tr.

31, 921.  Thus, the ALJ gave Dr. Brzusek's opinion less weight.  Tr. 31.

Plaintiff asserts Dr. Brzusek's opinion "is not framed in terms of just

worker's compensation," noting that Dr. Brzusek indicated that Plaintiff "has very

few skills to return to any type of competitive employment" and opined that

retraining to a lighter job would be impeded by his brain dysfunction.  ECF No. 11

at 12-13; Tr. 20-21.  However, the ALJ is responsible for determining whether a

claimant meets the statutory definition of disability, not a physician.  S.S.R. 96-5p.

A medical source statement that a claimant is "disabled" or "unable to work" does

not require the ALJ to determine the claimant meets the definition of disability.  20

CFR §§ 416.927(d)(1), 404.1527(d)(1) (2012).  Furthermore, the RFC

determination is the ALJ's responsibility, not a physician's. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). As Defendant observes, the vocational expert testified that there are jobs available in significant numbers in the national economy that a person with limitations matching the RFC can perform.[8] ECF No. 12 at 12; Tr. 69. Thus, the ALJ reasonably gave little weight to Dr. Brzusek's opinion for specific, legitimate reasons based on substantial evidence.

## C. Step Five

Plaintiff contends the step five finding is based on vocational expert testimony regarding an incomplete hypothetical. ECF No. 11 at 13-15. The ALJ's hypothetical to the vocational expert must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations. *Osenbrook v. Apfel*, 240 F.3D 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. The ALJ is not bound to accept as trued the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Osenbrook*, 240 F.3d at 1164; *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th

---

[8] The Court notes Dr. Brzusek indicated he could not "unilaterally" determine a viable vocation for Plaintiff, Tr. 921, perhaps suggesting the opinion of a vocational expert is an appropriate supplement to his opinion. Nonetheless, the ALJ's consideration of Dr. Brzusek's is legally sufficient.

Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence. *Magallanes*, 881 F.2d at *id.*

Plaintiff's argument is based upon the assumption that the ALJ erred in considering the medical opinion evidence and formulating the RFC finding. ECF No. 11 at 14. The RFC is "the most [a claimant] can still do despite his limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In making this finding, the ALJ need only include credible limitations supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that ALJ is not required to incorporate evidence from discounted medical opinions into the RFC). The ALJ's reasons for rejecting the opinions of Dr. Marks and Dr. Brzusek were legally sufficient and supported by substantial evidence, discussed *supra*. The ALJ therefore properly excluded limitations assessed by those providers from the RFC and hypothetical to the vocational expert. Thus, the hypothetical contained the limitations the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical was therefore proper. *See Magallanes*, 881 F.2d at 756-57; *Bayliss*, 427 F. 3d at 1217-18.

/ / /

/ / /

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** August 9, 2019.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge
